CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

OCT 3 0 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| MANDY JO MCKINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BERRY GLOBAL, INC., ) | Civil Action No. 5:18-CV-00137 |
| a Delaware corporation, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |
| SERVE: ) | |
| Corporation Service Company ) | |
| Registered Agent ) | |
| 100 Shockoe Slip, 2nd Floor ) | |
| Richmond, Virginia 23219 ) | |

## COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Mandy Jo McKinney, by counsel, complaining of the Defendant, Berry Global, Inc., alleges and says:

## NATURE OF THE ACTION

1. The Plaintiff, Mandy Jo McKinney ("Plaintiff"), brings this action for legal and equitable relief to correct and remedy her employer's unlawful, discriminatory, and retaliatory employment practices during the course and in the termination of her employment. Plaintiff brings this action to make her whole and compensate her for her employer's violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*

(the "FMLA"), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA").

## JURISDICTION AND VENUE

2. Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, and 29 U.S.C. § 2617, 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. The unlawful employment practices complained of herein occurred, and the employment records relevant to this matter are maintained and administered, within the Western District of Virginia, and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) and (c).

## ADMINISTRATIVE PROCEEDINGS AS TO ADA CLAIMS

4. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of disability, sex and retaliation on March 20, 2018, a true copy of which is attached hereto marked Exhibit 1. The EEOC issued Plaintiff a Dismissal and Notice of Rights letter on August 1, 2018.

5. Plaintiff received the Dismissal and Notice of Rights letter on or after August 4, 2018. This action has been commenced within 90 days of the date of receipt of the Notice of Rights letter.

6. All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred with respect to the Plaintiff's ADA and Title VII claims.

## PARTIES

7. Plaintiff is a 41 year old white female. She is a citizen of the United States and a resident of Fishersville, Augusta County, Virginia.

8. At times relevant to the claims herein, Plaintiff had been employed by the Defendant Berry for more than 12 months, working in excess of 1250 hours with Defendant Berry during the previous 12-month period. Plaintiff was an "eligible" employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a). Additionally, at all relevant times, Plaintiff was a "qualified individual" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(8).

9. Defendant Berry Global, Inc. (hereafter referred to sometimes as "Berry" or "Defendant") is, and at all relevant times was, a Delaware corporation with its principal office located in Evansville, Indiana.

10. At all relevant times, Defendant Berry operated a business engaged in, among other things, the manufacture and sale of packaging, protection solutions, tapes, adhesives and other engineered materials. At all relevant times, Defendant operated a manufacturing facility in Waynesboro, Virginia, where it primarily manufactures non-woven materials used for various products, such as diapers, medical gowns and cleaning wipes. Defendant Berry's Waynesboro, Virginia plant is located within the Harrisonburg Division of this District.

11. At all relevant times, Defendant was and is an employer engaged in an industry affecting commerce with 500 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Further, Defendant employed more than 500 employees at its worksite in Waynesboro, Virginia, where

Plaintiff worked. Defendant was an "employer" within the meaning, and subject to the provisions, of the FMLA pursuant to 29 U.S.C. § 2611(4)(A).

12. At all relevant times, Defendant was an "employer" within the meaning, and subject to the provisions, of the ADA pursuant to 42 U.S.C. § 12111(5)(A).

13. At all times relevant to the matters alleged herein, Defendant's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of the Defendant.

FACTS

14. Plaintiff began working for Defendant Berry in May 2015 as a material handler/fork truck driver. During her employment and through the date that her employment was illegally terminated on November 20, 2017, Plaintiff performed her job well and met Defendant Berry's legitimate expectations.

15. Plaintiff suffers from various serious health conditions which also constitute disabilities under the ADA.

16. In October 2017, Plaintiff applied for intermittent leave under the FMLA due to severe pain she was experiencing in her hip, leg and lower back. Plaintiff's physician certified her need for intermittent leave due to her serious health condition in October 2017, and she was referred by her health care provider to a physical therapist for treatments to alleviate her symptoms and treat her condition.

17. Plaintiff's health conditions, which included degenerative changes in her spine and hip, were and are chronic serious health conditions which also are physical impairments that substantially limit major life activities, including among other things, Plaintiff's musculoskeletal system, and her neurological system, among other bodily

systems. In addition, Plaintiff has a record of such substantially limiting impairments and/or Defendant Berry regarded her as being so impaired. Defendant Berry was fully aware of her health condition and disability.

18. Despite her health condition, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation. At times during her employment with Defendant Berry, and particularly in the last weeks of her employment, Plaintiff required short periods of leave to address her serious health conditions and her disabilities as described herein.

19. During Plaintiff's employment with Defendant Berry, she was the only female material handler/fork truck driver at the plant. Plaintiff was subjected to harassment and abusive treatment by a co-worker, Rick Gregory, who is a white male. His abusive and offensive conduct was directed towards Plaintiff because of her sex.

20. Mr. Gregory was blatant about his disdain for a woman in the material handler position. He told Plaintiff that a woman did not know how to do the job of material handler. He made it clear to others, as well as Plaintiff, that this was his attitude towards women. He did not like working with women for the same reason. Mr. Gregory would move material Plaintiff had already worked with and label it under his name so he would get credit. His animosity was due to his sexist attitude, conduct and abusive behavior towards Plaintiff.

21. Plaintiff complained about Mr. Gregory's sexist and abusive conduct towards her during her tenure with Defendant Berry. By early 2017, Mr. Gregory and Plaintiff were working on different shifts, but in the summer of 2017, Plaintiff was transferred to Mr. Gregory's shift.

5

22. In one evaluation by Ray Scroggins, a white male and then Plaintiff's supervisor, Mr. Scroggins told Plaintiff that the material handler position was "not meant for a girl." Plaintiff nonetheless received a good evaluation because of her objectively good performance.

23. Mr. Scroggins was a friend of Mr. Gregory.

24. Following approval for intermittent FMLA leave in October 2017, on occasions when Plaintiff needed to take leave to attend a physical therapy session, Defendant Berry's management would require Plaintiff to work overtime. This meant that Plaintiff needed to use more of her FMLA entitlement. Plaintiff then began having to schedule the entire day off for the physical therapy treatment to ensure that she covered her absences. Plaintiff's physician provided a revised certification on November 3, 2017.

25. In early November 2017, Plaintiff was discussing a work issue with a co-worker when Mr. Gregory suddenly approached Plaintiff on a pole truck. He laid on his horn and began verbally abusing Plaintiff with profane language. Plaintiff was closer to the truck than the co-worker, who later told Plaintiff that he could not hear what Mr. Gregory had said. Plaintiff verbally reported that incident to her supervisor, Robbie Hopkins, a white male.

26. On November 12, 2017, Plaintiff was feeling intense pain in her hip. Due to the pain, she was forced to take intermittent FMLA leave to which she was entitled.

27. On that day, Plaintiff walked to the time-clock area of the plant to clock out of work in order to take her intermittent leave. Mr. Gregory came around a pallet

6
Case 5:18-cv-00137-EKD   Document 1   Filed 10/30/18   Page 6 of 16   Pageid#: 6

near line 14 driving a pole truck in a reckless manner. Plaintiff was forced to quickly move out of the way or she would have been struck by the pole truck.

28. Plaintiff reported the incident by email to Mr. Hopkins.

29. On November 13, 2017, Plaintiff had a day off. She was asked to come to work to discuss the incident from the day before with Mr. Gregory. Plaintiff was interviewed by Jennifer Weaver in the human resources department. Plaintiff provided truthful information to Ms. Weaver, and also told Ms. Weaver about the incident from the previous week which she had reported verbally to her supervisor. Plaintiff told Ms. Weaver about Mr. Gregory's abusive language in which he called Plaintiff "f---ing crazy" the previous week. Plaintiff also told Ms. Weaver that the co-worker with whom she was speaking had said that he did not hear what Mr. Gregory had said.

30. Ms. Weaver asked whether there was anyone else Plaintiff knew who might support allegations of misconduct by Mr. Gregory. Plaintiff gave her names of co-workers who themselves had told Plaintiff that they had observed conduct by Mr. Gregory that they thought was inappropriate.

31. In addition, Ms. Weaver and Defendant Berry already knew about Mr. Gregory's abusive behavior from Plaintiff's previous complaints, including complaints that Mr. Gregory had said that a woman could not do the job of material handler. Moreover, Ms. Weaver had approached Plaintiff during the summer of 2017 when Plaintiff was transferred to Mr. Gregory's shift, and told Plaintiff to come to her if she had any problems with Mr. Gregory.

32. Plaintiff told Ms. Weaver that she was concerned about being treated fairly, and that she felt she was not going to be treated fairly, because Mr. Scroggins had moved to the human resources department.

33. Plaintiff's complaint to Defendant Berry about Mr. Gregory related to being abused and harassed due to her sex which was creating a hostile work environment based on sex.

34. On November 20, 2017, Plaintiff was taken to the human resources office where she met with Jennifer Weaver and Lindsey Hudson, another member of the HR department.

35. Ms. Weaver first told Plaintiff that Mr. Gregory had been fired, but not for anything Plaintiff had reported.

36. Ms. Weaver then told Plaintiff that she had learned from other employees that Plaintiff had coached them on what to say about Mr. Gregory and as a result was being terminated for violation of company policy.

37. The reason offered for the termination of Plaintiff's employment was false and a mere pretext to cover up Defendant Berry's discriminatory and retaliatory conduct. Plaintiff did not "coach" anyone on what to say about Mr. Gregory.

38. Plaintiff was shocked. She reminded Ms. Weaver about telling Ms. Weaver that the other employee present during the incident involving Mr. Gregory on November 12, 2017 said he had not heard what Mr. Gregory said. Ms. Weaver had no comment.

39. In any event, Plaintiff's conduct in discussing with co-workers the abusive behavior to which she was being subjected in violation of Title VII was and is protected activity under Title VII.

40. As a result of Defendant Berry's actions, Plaintiff has suffered loss of, and has been denied, her job, income and benefits and has suffered severe emotional distress, humiliation, embarrassment, injury to her reputation, and anxiety and depression.

## COUNT I
### Violations of the Title VII

41. Plaintiff incorporates by reference and realleges Paragraphs 1-40 as if fully set forth here.

42. Plaintiff complained about harassing, abusive and physically threatening conduct by a white male directed towards her because of her sex, female, which conduct she reasonably believed was a part of a sexually hostile and abusive work environment and was directed towards her based on sex.

43. In violation of 42 U.S.C. § 2000e Defendant discriminated and retaliated against Plaintiff, and terminated Plaintiff's employment, because Plaintiff exercised her rights to oppose and be free from harassment and abusive conduct based on her sex.

44. As a consequence of Defendant's violations of the Title VII, including its discriminatory and retaliatory conduct, Plaintiff has suffered great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life.

45. As a consequence of Defendant's actions, Plaintiff has lost wages and other financial incidents and benefits of employment.

46. As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

47. Defendant engaged in the retaliatory practices complained of with malice and/or with reckless indifference to the federally protected rights of Plaintiff.

48. Plaintiff is entitled to recover punitive damages and for other damages which she has suffered.

## COUNT II
## Violations of the FMLA

49. Plaintiff incorporates by reference and realleges Paragraphs 1-48 as if fully set forth here.

50. Plaintiff's health conditions, including her severe pain in her back and hip, constituted chronic serious health conditions within the meaning of the FMLA, and/or its implementing regulations, of which Defendant was well aware.

51. At all relevant times, Plaintiff suffered from chronic conditions which were treated with medications and/or therapy and required more than two visits per year to see a healthcare provider for the conditions. Plaintiff's serious health conditions and her related need for absences were protected under the FMLA.

52 Plaintiff had not exhausted her FMLA leave entitlement with respect to the matters complained of herein. Plaintiff was entitled to and took leave to which she was entitled under the FMLA as a result of her serious health conditions.

53. Defendant's managers and supervising employees were upset over the periods of time Plaintiff had to take off work due to her serious health conditions in October and November 2017. All of the leave Plaintiff took was FMLA-qualifying, as well as time she may have needed to take off work in the future/ Because of Plaintiff's

use of leave, and need to use leave in the future, under the FMLA, Defendant Berry deemed her undependable.

54. Defendant used Plaintiff's required leave, which was FMLA-qualifying, and Plaintiff's possible future need for leave in relation to her serious health conditions, as negative factors in employment decisions relating to her, including terminating her from her job.

55. Defendant interfered with Plaintiff's rights under the FMLA, retaliated, and discriminated against Plaintiff for using FMLA qualifying leave, and terminated Plaintiff from her employment in violation of 29 U.S.C. §§ 2615(a)(1) and (a)(2), and/or 29 U.S.C. §§ 2615(b).

56. Defendant's conduct interfered with, restrained, and/or denied the exercise of or attempt to exercise Plaintiff's rights under the FMLA.

57. Defendant's conduct, including the termination of Plaintiff's employment, was in retaliation for her use of FMLA leave and/or her anticipated use of FMLA leave in the future.

58. Defendant's conduct complained of herein was willful and without legal justification.

59. As a direct and proximate result of the acts and practices of Defendant, its agents and employees set forth herein, Plaintiff has suffered and continues to suffer injury and damage, including loss of employment, and past and future loss and denial of income, including wages, healthcare benefits, and other employment benefits.

## COUNT III
### Violations of the ADA

11
Case 5:18-cv-00137-EKD   Document 1   Filed 10/30/18   Page 11 of 16   Pageid#: 11

60. Plaintiff incorporates by reference and realleges Paragraphs 1-59 as if fully set forth here.

61. The ADA Amendment Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of discriminatory discharge and failure to accommodate because Defendant's actions took place after the effective date of the ADAAA. Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note). Under the ADAAA, Plaintiff's disabilities must be assessed without regard to the ameliorative effects of mitigating measures like medical treatments, including therapy and medication.

62. Without treatment, including physical therapy, recovery periods and continuing therapy and short periods of leave for her hip and back condition, and other health conditions, Plaintiff's condition would not have improved and her ability to work would have diminished.

63. Among other things, Defendant:

a. terminated Plaintiff's employment based upon Plaintiff's disability, whether actual, through the record of Plaintiff's substantially limiting impairments, or Defendant having regarded Plaintiff as having such impairments;

b. failed and refused to make and implement reasonable accommodations with respect to Plaintiff's disability or disabilities, including providing a short period and/or short periods of medical leave (to which Plaintiff was entitled under the FMLA and/or the ADA as well as Defendant's own policies), and these failures and refusals were not in good faith;

c. terminated Plaintiff based on the need to make reasonable accommodations in November 2017 for Plaintiff's disability;

d.  used Plaintiff's disability or disabilities, whether actual or through a perception of disability and/or her record of having a substantially limiting impairment of major life activities, as negative factors in consideration of her job performance and anticipated future performance;

e.  failed to engage and/or continue to engage in the interactive process with Plaintiff and her healthcare providers to determine the extent and nature of the necessary reasonable accommodations for Plaintiff's disability;

f.  retaliated against Plaintiff for her use of short periods of leave that qualified for protection under the ADA; and

g.  otherwise discriminated and retaliated against Plaintiff based upon disability under the ADA.

64. The Defendant's adverse actions taken in connection with Plaintiff's employment were discriminatory and based on Plaintiff's disability.

65. Plaintiff was and is qualified for the job she was performing as a material handler/forklift driver because she satisfies the skills, experience and other job-related requirements for the position as well as other positions at Defendant.

66. At all relevant times, Plaintiff was able to perform the essential functions of the position she was occupying with or without reasonable accommodation.

67. The Defendant's intentional discrimination and/or retaliation was with respect to Plaintiff's terms, conditions, and privileges of employment and resulted in damage to Plaintiff because of disability.

68. As a consequence of Defendant's intentional discrimination based on disability and/or retaliation, Plaintiff has suffered, continues to suffer, and will in the

future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life.

69. As a consequence of Defendant's actions, Plaintiff has lost wages and other financial incidents and benefits of employment, and Plaintiff will continue to suffer such losses.

70. As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

71. Defendant engaged in the discriminatory and/or retaliatory practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA.

72. Plaintiff is entitled to recover punitive damages and other damages which she has suffered.

WHEREFORE, Plaintiff Mandy Jo McKinney demands judgment against Defendant Berry Global, Inc. as follows:

(a) For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by 29 U.S.C. § 2601, *et seq.*, the Family and Medical Leave Act of 1993, the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* and/or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;*

(b) For a permanent injunction enjoining the Defendant from any conduct violating Plaintiff's rights as secured by the FMLA, the ADA and/or Title VII and ordering reinstatement of Plaintiff to her job, or in the event that the Court determines that reinstatement is not appropriate, for an award of front pay and benefits;

(c) For an award of back pay, prejudgment interest, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost;

(d) For an award of liquidated damages pursuant to 29 U.S.C. § 2617;

(e) For an award of compensatory damages under the ADA and/or Title VII in an amount to be determined by the jury at trial;

(f) For an award of punitive or exemplary damages under the ADA and/or Title VII in an amount to be determined by the jury at trial;

(g) For an award of attorneys' fees and costs incurred in this action, together with expert witness fees and expenses;

(h) For an award in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(i) For an award of pre- and post-judgment interest on any monetary award; and

(j) For any other relief this Court deems to be just and proper.

MANDY JO MCKINNEY
By: <u>Counsel</u>

s/Timothy E. Cupp
Timothy E. Cupp, VSB No. 23017
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
(540)432-9988
(804)278-9634 (facsimile)
E-mail: cupp@scs-work.com

Tim Schulte, VSB No. 41881
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, Virginia 23220
(804)644-9700
(804)278-9634
schulte@scs-work.com
*Counsel for Plaintiff*

DEMAND FOR JURY TRIAL:

The Plaintiff, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action, this 30th day of October, 2018.

                                      s/Timothy E. Cupp
                                      Timothy E. Cupp, VSB No. 23017
                                      Counsel for Plaintiff